In re David J. **PANAIA**, Barbara A. Panaia, Debtors.

The **CONNECTICUT NATIONAL BANK**, Plaintiff,

v.

David J. **PANAIA**, Defendant.

Bankruptcy No. 4–83–00091–G. Adv. No. 4–84–0080.

United States Bankruptcy Court, D. Massachusetts.

Oct. 2, 1986.

Michael P. Berman, Berman & Sable, Hartford, Conn., for plaintiff Connecticut Nat. Bank.

Joseph B. Collins, Hendel, Collins, Stocks & Newton, Springfield, Mass., for defendant/debtor David J. Panaia.

## MEMORANDUM AND ORDER

JAMES F. QUEENAN, JR., Bankruptcy Judge.

David J. Panaia (the "Debtor") moves for an award of attorneys' fees and costs against the Connecticut National Bank (the "Bank"). For the reasons stated herein, the Court declines to award attorneys' fees under 11 U.S.C. § 523(d).

## I. FACTS

The Bank brought this adversary proceeding against the Debtor on June 29, 1984, seeking to determine the dischargeability of a debt. The debt owed to the

Bank concerned a promissory note secured by a mortgage on real property located in East Longmeadow, Massachusetts. The Bank received the note and mortgage as part of a settlement of a dispute between the Bank and B–D America, Inc, a corporation which employed the Debtor as its President.

The Bank's complaint alleged that the Debtor misrepresented the amount of mortgage debt on the East Longmeadow property while he was under oath at a deposition. The Debtor responded to the complaint with a motion to dismiss and a request for attorneys' fees and costs under 11 U.S.C. §§ 105 & 523(d). Another judge of this Court took the case under advisement on January 16, 1986; by agreement of the parties, the Court subsequently decided the matter on the record without a trial.

The Court's decision, dated June 19, 1986, found that the Debtor gave the Bank the note and mortgage both to satisfy his obligations as a guarantor on an equipment lease between the Bank and B–D America, Inc. and to settle litigation between the Bank and the company. The Court also found that the Debtor had made a statement that his mortgage debt on the East Longmeadow property was $70,000, but noted that the Debtor disputed the amount of debt to the first mortgagee (who claimed $150,000). *Connecticut National Bank v. Panaia (In re Panaia),* 61 B.R. 959, 960 (Bankr.D.Mass.1986).

Using these findings of fact, along with a finding that the Debtor made an oral statement instead of a written statement, the Court applied 11 U.S.C. § 523(a)(2)(B) and found that the Bank had failed to state a cause for which relief could be granted. The Court, therefore, dismissed the Bank's complaint with prejudice under FED.R.CIV.PRO. 12(b)(6). *Connecticut National Bank,* 61 B.R. 959 at 961.

The dispute here involves this Court's resolution of the Debtor's request for attorneys' fees in connection with the motion to dismiss. In its June 19th opinion, the Court stated:

Section 523(d) provides that, in a case such as this one, where a creditor requests the dischargeability of a consumer debt under [§ 523(a)(2)], and the debt is discharged, the court may award costs and a reasonable attorney's fee to the Debtor if the court finds that the position of the creditor was not substantially justified. The Court finds that the Bank's position in this case was not substantially justified and is prepared to award costs and reasonable attorneys' fees to the Debtor. A further hearing will be necessary to determine what the amount of these cost [sic] and attorneys' fees will be.

*Connecticut National Bank v. Panaia (In re Panaia),* 61 B.R. 959, 961 (Bankr.D. Mass.1986). The order attached to the memorandum then stated: "The [Debtor] is to file a pleading, setting out with specificity the amount of attorneys' fees and costs he is seeking. Thereafter, he is to contact the clerk's office for a date for a hearing on these fees and costs." *Connecticut National Bank v. Panaia (In re Panaia),* 61 B.R. 959 (Bankr.D.Mass.1986) (order dismissing complaint).

The Debtor asserts that the Court's prior opinion already decided the propriety of paying attorneys' fees and costs, and that the only issue remaining is the amount thereof. The Bank argues that attorneys' fees cannot be awarded in this case because the debt involved was a non-consumer debt; therefore, the Bank contends, the Court has no power to award attorneys' fees in this case because no specific statutory authority exists for such an award.

Thus, the primary issue presented in this case is whether the Court is obligated to award attorneys' fees to the Debtor pursuant to the June 19, 1986 decision.

## II. DISCUSSION

### A. *The Law of the Case*

It is difficult to determine whether the June 19, 1986 memorandum actually awarded attorneys' fees to the Debtor. The Court on June 19 made an express

finding that no substantial justification existed for the complaint and also made an implied finding that a consumer debt was involved. Both of these findings are prerequisites to an award to attorneys' fees under the version of § 523(d) the Court applied.[1] The prior judge, however, only said that he was "prepared" to award fees and stated the need for a hearing on the amount. *Connecticut National Bank v. Panaia (In Re Panaia),* 61 B.R. 959, 961 (Bankr.D.Mass. June 19, 1986). Arguably, the Court, through its choice of words, merely indicated that a *basis* for an award existed and that a final determination would occur in the hearing on the amount. On the other hand, the Court may have only left open the reasonableness of the ultimate amount awarded. Although it is difficult to say without hesitation, this Court finds that the prior judge intended to award attorneys' fees and costs on June 19, 1986, and only left open the question of the amount to be awarded.

Regardless of whether the Court made a final award on June 19, 1986, the proceeding is properly before this Court now because the decision expressly left unresolved the issue of the amount of attorneys' fees. The first question the Court must resolve is whether, given the "law of the case" doctrine, the June 19, 1986 decision and order restricts us to a determination of the reasonableness of the amounts requested by the Debtor. This issue necessitates an inquiry into the power of this Court to reexamine what has already been decided in the prior opinion.

■ Because the dispute before the Court is but one stage of a continuing proceeding, the "law of the case" doctrine governs the Court's power to reopen the case. *Arizona v. California,* 460 U.S. 605, 618–19, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1982) ("Law of the case" doctrine is crafted to apply to the various stages of ordinary litigation). The doctrine expresses the principle that "when a court decides on a rule of law, that decision should con-

tinue to govern the same issue in subsequent stages in the same case." *Arizona v. California,* 460 U.S. at 618, 103 S.Ct. at 1391; *See* 1B J. MOORE & T. CURRIER, MOORE'S FEDERAL PRACTICE ¶ 0.404[1] (1984). The doctrine is not a limit on the power of the court; it finds its roots in the court's discretion. *Arizona v. California,* 460 U.S. at 618, 103 S.Ct. at 1391; *Messenger v. Anderson,* 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912); *Doe v. Anrig II,* 728 F.2d 30, 31 (1st Cir.1984). The advice of the doctrine is that courts should be careful not to undermine prior decisions and stir up settled issues without sound reasons to do so. *White v. Higgins,* 116 F.2d 312, 317 (1st Cir.1940) (court's power to reopen points of law already decided is a power which will necessarily be exercised sparingly, and only in a clear instance of previous error, to prevent a manifest injustice); *see* 1B J. MOORE, *supra,* at ¶ 0.404[1]. This concern is particularly applicable when, as in this case, another judge rendered the prior decision. "A judge should hesitate to undo his own work ... [s]till more should he hesitate to undo the work of another judge...." *Peterson v. Hopson,* 306 Mass. 597, 603, 29 N.E.2d 140, 149 (1940).

■ Still, a court is not required by the doctrine to abstain from correcting erroneous rulings, so long as all the issues in the case have not proceeded to final judgment and a manifest injustice exists if the error is not corrected. *White v. Higgins,* 116 F.2d 312, 317 (1st Cir.1940); *Champaign-Urbana News v. J.L. Cummings,* 632 F.2d 680, 683 (7th Cir.1980). (trial court should set itself right as soon as possible if convinced that the law of the case is erroneous). We turn now to consider whether, as the Bank alleges, an award of attorneys' fees in this case is erroneous.

*B. Attorneys' fees under 11 U.S.C. §§ 105(a) & § 523(d)*

As stated earlier, the Court on June 19, 1986 made two findings: (1) it expressly

---

1. The Court applied the statute as amended in 1984. The correctness of the application of this version of the statute is discussed in this Memorandum, *infra.*

found that the Bank's position was not substantially justified; and (2) it found by implication that the Debtor owed a consumer debt to the Bank. The Court then stated it was "prepared" to award attorneys' fees. Since we have found that the Court's choice of words meant that it intended to award attorneys' fees, subject only to the reasonableness of such fees to be determined at a subsequent hearing, we conclude that the law of the case, as applied, is erroneous and must be corrected.

First, the finding of "no substantial justification" applied the version of § 523(d) as it was amended in 1984. The Debtor filed his petition for relief in 1983; the 1984 amendments only apply to cases filed after October 10, 1984. P.L. 98–353, § 553(a), 98 Stat. 392 (July 10, 1984); *Creasy v. Coleman Furniture Corp.*, 763 F.2d 656, 660 (4th Cir.1985). Adversary proceedings connected with pre-1984 cases are also governed by the law before the 1984 amendments. *See In re Hartwig Poultry, Inc.*, 57 B.R. 236, 238 (Bankr.N.D.Ohio 1986). Therefore, attorneys' fees in this matter are controlled by § 523(d) as it existed before 1984, which read:

> If a creditor requests a determination of dischargeability of a consumer debt under [§ 523(a)(2) ], and such debt is discharged, the court shall grant judgment against such creditor and in favor of the debtor for the costs of, and a reasonable attorneys' fee for, the proceeding to determine dischargeability, unless such granting of judgment would be clearly inequitable.

11 U.S.C. § 523(d) (1982).

 With the correct law now in view, the issue that confronts the Court is whether the prior implied finding of a "consumer debt" is correct. 11 U.S.C. § 101(7) defines a "consumer debt" as a "debt incurred by an individual primarily for a personal, family, or household purpose." Although it is possible that real property may be the subject of a consumer debt, *see Bank of Colombia Falls v. Burgess (In re Burgess)*, 22 B.R. 771 (Bankr.M.D.Tenn.1982), debts incurred on real property for business pur-

poses cannot be consumer debts. *Lenzycki v. Nicholson (In Re Nicholson)*, 51 B.R. 198, 199 (Bankr.M.D.Fla.1985). Here, the court on June 19, 1986 expressly made findings of fact that the Debtor gave the note and mortgage to satisfy his obligations as guarantor on a *business* equipment lease and to help settle litigation between the Bank and his employer. These motives cannot be called "personal, family, or household" purposes by any stretch of the imagination. Therefore, no basis exists for an award of attorneys' fees under either version of § 523(d) since no consumer debt existed.

 The Debtor also cites as a basis for an award 11 U.S.C. § 105(a), which reads as follows: "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." If § 105(a) supports a recovery of attorneys' fees even when § 523(d) is not applicable, the law of the case doctrine would require this Court to exercise its discretion to preserve the correct result despite the faulty reasoning. *See White v. Higgins*, 116 F.2d 312, 317 (1st Cir.1940) (clear error *and* a manifest injustice should exist before a case is reopened). There is no basis to conclude, however, that § 105(a) authorizes an award of attorneys' fees in the absence of specific statutory authority. The "American Rule" requires courts, as a general practice, to refuse to award attorneys' fees to prevailing litigants unless the legislature has provided an exception to the rule. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) (reaffirming the American Rule); *Arcambel v. Wiseman*, 3 U.S. (3 Dall.) 306, 3 Dall. 306, 1 L.Ed. 613 (1876). Bankruptcy courts are bound by this principle as well. *United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir.1986); *All American of Ashburn, Inc. v. Fox (In Re Fox)*, 725 F.2d 661, 662 (11th Cir.1984); *In Re United Merchants & Manufacturers, Inc.*, 597 F.2d 348, 349 (2nd Cir.1979) (per curiam).

Section 105(a) does not provide a specific exception to the American Rule doctrine.

The statute's broad equitable powers do not allow bankruptcy courts to enlarge upon a situation where Congress has unambiguously laid out the test for attorneys' fees awards. *All American of Ashburn, Inc. v. Fox (In Re Fox)*, 725 F.2d 661, 663 (11th Cir.1984); *see Lifetime Communities v. Administrative Office (In Re Fidelity Mortgage Investors)*, 690 F.2d 35, 40 (2d Cir.1982). Although a traditional equitable exception exists to the American Rule to permit shifting of fees as an equitable punishment for abusive or bad faith litigation practices, *All American of Ashburn, Inc. v. Fox (In Re Fox)*, 725 F.2d 661, 663 (11th Cir.1985); *see* Note, *Awards of Attorney's Fees to Unsuccessful Environmental Litigants*, 96 Harv.L.Rev. 677, 679 (1983), we do not believe that the equitable powers in § 105(a) are the proper basis for such an award. BANKR.R. 9011(a) provides the means in bankruptcy court to challenge the good faith of litigation practices and obtain sanctions, not § 105(a). In any event, Congress has provided the express criteria for an award of attorneys' fees in this case with § 523(d), and its intent and policy judgment in so providing should be respected by this Court. The equitable powers in § 105(a) are more appropriately used by a bankruptcy court to issue injunctions and "take other necessary steps in aid" of its jurisdiction. *United States v. Sutton*, 786 F.2d 1305, 1307 (5th Cir.1986).

There is, therefore, no basis for an award of attorneys' fees under either § 523(d) or § 105(a). If the Court awarded attorneys' fees here, it would be exceeding its limited power to award fees in this situation. Such an award in excess of the court's power would be unjust and unfair to the Bank, and would be a result not intended by Congress when it enacted § 523(d). The Court, therefore, MODIFIES its June 19, 1986 decision to find that no consumer debt existed and to DENY the Debtor's motion for attorneys' fees and costs under § 523(d) & § 105(a). In all other respects, the decision remains unchanged. The Court also DENIES the Debtor's motion for approval of attorneys' fees and costs.

SO ORDERED.